**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hector ZUNIGA, Defendant–Appellant.**

No. 94–50416.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1995.

Decided Sept. 18, 1995.

Myra Sun and Monica Knox, Deputy Federal Public Defenders, Los Angeles, CA, for defendant-appellant.

Edward B. Moreton, Jr., Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

Before: HALL and LEAVY, Circuit Judges, and HOGAN,* District Judge.

* The Hon. Michael R. Hogan, Chief United States District Judge for the District of Oregon, sitting by designation.

HOGAN, Chief District Judge:

Hector Zuniga appeals a 30 month prison sentence imposed following his guilty plea to conspiracy to possess stolen goods from interstate shipment in violation of 18 U.S.C. § 371. He charges that the district court erred when it applied section 2B1.1(b)(5)(B) of the Sentencing Guidelines to increase his offense level for being "in the business of receiving and selling stolen property."

## FACTUAL BACKGROUND

Pursuant to an ongoing investigation of thefts of goods from rail yards and trucking companies around the Los Angeles area, the FBI set up an undercover warehouse available to persons trafficking in stolen goods. The warehouse was equipped with audio and video recording devices. An undercover FBI special agent ("UCA") ostensibly ran the warehouse.

On April 19, 1992, the UCA received a telephone call from a man named "Juan". Juan told the UCA that he needed the warehouse to store a stolen load of merchandise and he gave Zuniga's pager number to the UCA. Later that same day, Zuniga paged the UCA. When the UCA returned the page, Zuniga asked the UCA to store a load of goods he was planning to steal.

On the same day, Zuniga and codefendant Fernando Santos Ramirez stole a tractor and trailer containing 254 cases of American Airlines travel kits. The travel kits were worth $77,000.

Shortly after midnight the next day, April 20, 1992, Zuniga and other unidentified men arrived at the warehouse with the stolen travel kits. Later that day, Zuniga came back to the warehouse with Ramirez and negotiated the sale of the travel kits to the UCA for $5,000. Zuniga told the UCA that five individuals had been involved in stealing the travel kits and that they each would receive $1,000. At that time, Zuniga also told the UCA that Juan owed him $15,000 for a load of female denim jumpsuits. He stated

that Juan paid him $35,000 for the jumpsuits and an individual known as Pena arranged the deal.

On July 30, 1992, the UCA returned a page to Zuniga who advised him that he had three loads of stolen goods, two loads of women's hair spray and one load of automobile rims, that he wanted to store at the undercover warehouse. Zuniga also told the UCA he would be involved in the theft of additional loads that evening and would be receiving a stolen shipment of video cassette recorders. In addition, Zuniga stated that a stolen load of Bugle Boy clothing had been sold recently in Mexico.

Early on July 31, 1992, the UCA returned a page from Juan who told the UCA he had the stolen wheel rims, that were to be stored at the warehouse, parked out on the street. A few hours later, Zuniga arrived at the warehouse. At the same time codefendants Martin Hernandez, Sustroberto Santamaria and Santiago Arias arrived with the stolen tractor and trailer containing the wheel rims, valued at approximately $115,000.

After the wheel rims were unloaded, Zuniga loaded several of the rims into his truck. He instructed two of the codefendants to drive the tractor and trailer far from the warehouse and abandon it. Zuniga also instructed Juan to follow the men and pick them up. A few days later, Zuniga and the UCA negotiated a $25,000 sales price for the wheel rims.

Later that same evening, Zuniga met the UCA at the warehouse. He asked the UCA if he was interested in purchasing a shipment of shorts in the possession of an individual named Chino. Zuniga offered to provide Chino with the UCA's pager number so they could negotiate a deal regarding the stolen load of shorts.

Zuniga also advised that upon his return from a brief visit to Mexico he would like to steal a load of electronics and bring them to the warehouse. Zuniga also indicated that he had travelled to the San Francisco area to assist another individual in stealing a load of merchandise, which was brought to the Los Angeles area. He stated that he was awaiting payment for that load and his associate was having difficulty finding a warehouse to store it.

## PROCEDURAL BACKGROUND

On December 17, 1993, Zuniga and his codefendants were charged by a grand jury in two two-count indictments with one count of conspiracy to possess goods stolen from an interstate shipment, in violation of 18 U.S.C. § 371, and possession of goods stolen from an interstate shipment, in violation of 18 U.S.C. § 659. One of the indictments arose out of possession of the $77,000 worth of stolen airline travel kits. The other indictment arose out of the possession of the $115,000 worth of stolen wheel rims.

On March 15, 1994, Zuniga pleaded guilty to count one of each of the indictments. Count two of each of the indictments was dismissed upon the government's motion at the time of sentencing. The Presentence Report ("PSR") recommended, and the government concurred, that the offense level be enhanced four levels pursuant to section 2B1.1(b)(5)(B) for Zuniga being in the business of receiving and selling stolen property.

The district court determined that Zuniga was in the business of receiving stolen goods and applied a four-offense level enhancement pursuant to section 2B1.1(b)(5)(B) of the 1993 Sentencing Guidelines. The enhanced offense level was then reduced by three levels for acceptance of responsibility under section 3E1.1, resulting in a total offense level of 14. When combined with Zuniga's criminal history category of IV, the resulting sentencing range was 27 to 33 months. The district court sentenced Zuniga to 30 months imprisonment on both counts to which he pleaded guilty, with the sentences to be served concurrently, followed by a three-year term of supervised release.

## STANDARD OF REVIEW

██ The district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*. *United States v. Buenrostro-Torres*, 24 F.3d 1173, 1174 (9th Cir. 1994). For example, whether a defendant's prior conviction falls within the scope of the Sentencing Guidelines is reviewed *de novo*.

*United States v. Robinson,* 967 F.2d 287, 292 (9th Cir.1992).

■ The district court's factual findings in the sentencing phase are reviewed for clear error. *Buenrostro–Torres,* 24 F.3d at 1174; *see also United States v. Pinkney,* 15 F.3d 825, 827 (9th Cir.1994) (finding that defendant was not a minor participant is reviewed under clearly erroneous standard). Circumstances justifying an increase from the base offense level must be proven by a preponderance of the evidence. *United States v. Wilson,* 900 F.2d 1350, 1354 (9th Cir.1990).

## DISCUSSION

Section 2B1.1(b)(5)(B) provides: "If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels." U.S.S.G. § 2B1.1(b)(5)(B) (1993).

### A. *Appropriate Standard of Review*

■ As a threshold matter, the parties dispute the appropriate standard of review for the district court's determination that section 2B1.1(b)(5)(B) applied to Zuniga's offense. Zuniga contends that the decision to enhance his sentence under section 2B1.1(b)(5)(B) was purely a legal determination to be reviewed *de novo.* The government views the district court's decision as following directly from the resolution of a factual dispute and, therefore, to be reviewed under a clearly erroneous standard.

We will apply a *de novo* standard of review. At a minimum, the determination by the district court that Zuniga was "in the business of receiving and selling stolen property" requires determinations of both of law and fact. Zuniga is not challenging the fact or substance of the conduct relied on by the district court to trigger the enhancement. Rather, he questions, essentially, the sufficiency of the conduct relied on by the district court to support the conclusion that he was "in the business of receiving or selling stolen property."

### B. *Section 2B1.1(b)(5)(B) Enhancement*

This Circuit has not yet considered the proper application of the section 2B1.1(b)(5)(B) enhancement; formerly, section 2B1.2(b)(4)(A). The Background information provides:

> The treatment accorded receiving stolen property parallels that given theft. Persons who receive stolen property for resale receive a sentence enhancement because the amount of property is likely to underrepresent the scope of their criminality and the extent to which they encourage or facilitate other crimes.

*1992 Manual,* § 2B1.2, "Background," at 55.

■ Two approaches for determining whether this enhancement applies have developed among the circuits, and they turn on a determination of whether the defendant was "in the business." The first test is the so called "fence" test, adopted by the Fifth, Sixth and Seventh Circuits, and urged here by Zuniga. *United States v. Warshawsky,* 20 F.3d 204, 214 (6th Cir.1994); *United States v. Esquivel,* 919 F.2d 957, 959 (5th Cir.1990); *United States v. Braslawsky,* 913 F.2d 466, 468 (7th Cir.1990) (enhancement does not apply to a defendant who sells property that he himself has stolen). Under the "fence" test, the government must show that defendant was a person who buys and sells stolen property and, thereby, encourages others to commit property crimes.

■ The second test is the so called "totality of the circumstances" test, adopted by the First and Third Circuits, and urged here by the government. *See United States v. King,* 21 F.3d 1302, 1306 (3d Cir.1994); *United States v. St. Cyr,* 977 F.2d 698, 703 (1st Cir.1992). *See also United States v. Rosa,* 17 F.3d 1531, 1551–52 (2d Cir.) (implicitly following the totality of the circumstances test), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994). Under the "totality of the circumstances" test, the sentencing judge undertakes a case by case approach with emphasis on the "regularity and sophistication of a defendant's operation." *St. Cyr,* 977 F.2d at 703. Both Zuniga and the government assert that their respective positions should prevail under either test. We adopt

the "totality of the circumstances" test originally set forth by the First Circuit in *St. Cyr.*

Turning to whether the enhancement was appropriate in this case, the government contends that Zuniga was trafficking in stolen property; selling it to the UCA who in turn was intending to sell it on the street. The UCA was not the end purchaser, but a middle man. Relying on the evidence as set forth in the PSR, the government presented evidence that Zuniga had no legitimate means of livelihood during the several months that he was involved in the activities that support both convictions; he had access to hundreds of thousands of dollars worth of cargo during that time; he spoke to the UCA about obtaining stolen property of additional amounts; he was involved with stolen property beyond the stolen property in this case; he had knowledge of stolen property in other situations; and he had previous numerous convictions for stolen property offenses.

In response, Zuniga argues that his possession of mass quantities of stolen merchandise is not sufficient to trigger the enhancement. Further, he argues the enhancement does not apply to a person who sells property he has stolen; rather, it applies to someone in the business of receiving and selling stolen property—a professional fence. He also submitted letters to establish his ongoing legitimate employment and disagrees that his prior convictions for theft were relevant to the enhancement determination for this conviction.

Based on the regularity and sophistication of Zuniga's operation, the enhancement was appropriate here under the "totality of the circumstances." The district court could reasonably conclude from the evidence presented that Zuniga was warehousing and selling merchandise stolen by others, i.e., fencing property, in addition to property stolen by him. That determination by the district court was not clearly erroneous and was supported by the preponderance of the evidence. Zuniga concedes that he was in possession of "mass quantities" of stolen merchandise, which he was warehousing and selling. His admittedly large operations were conducted over a significant period of time; extended up and down the west coast; and

involved a variety of people. *See, e.g., United States v. Rowland,* 848 F.Supp. 639, 644 (E.D.Va.1994) (Defendant, who received stolen equipment from those who stole it and located others who would sell it, was "in the business".). Finally, consideration by the district court of Zuniga's prior convictions for property theft and receiving and selling stolen property to conclude he was "in the business" was proper. *See generally United States v. Connor,* 950 F.2d 1267, 1275 (7th Cir.1991) (enhancement applies to those who have previously engaged in significant illegal conduct similar to the instant offense).

The district judge's factual conclusions were not clearly erroneous and his legal determination that the section 2B1.1(b)(5)(B) enhancement should apply was correct. The decision of the district court is **AFFIRMED.**