**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

RODNEY ROBERT KIMBREW, a.k.a.
Carlton Cochran,
           *Defendant-Appellant.*

No. 04-10193

D.C. No.
CR-99-20196-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
April 12, 2005—San Francisco, California

Filed May 11, 2005

Before: Donald P. Lay,* Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Michael V. Severo, Los Angeles, California, for the defendant-appellant.

Amber S. Rosen (argued) and Jeffrey D. Nedrow (briefed), Assistant United States Attorneys, San Jose, California, for the plaintiff-appellee.

---

**OPINION**

HAWKINS, Circuit Judge:

Rodney Kimbrew, a.k.a. Carlton Cochran, appeals his conviction and sentence for conspiracy to commit money laundering. In an issue of first impression, we must decide whether the sentencing enhancement for being in the business of receiving and selling stolen property can apply to a defendant who sells only property that he himself has obtained by fraud. We agree with the overwhelming majority of circuits that it cannot. We affirm Kimbrew's conviction, but vacate his sentence and remand for resentencing.

**FACTS AND PROCEDURAL HISTORY**

Beginning in 1996, Kimbrew and several co-conspirators, including Dayne Williams and Damien Springs, began a scheme to defraud computer suppliers: they set up fake corporations and then established lines of credit with wholesale computer supply companies using phony references and falsified credit information.

The fraudulent companies used telephone answering services in San Jose, California, which would forward calls to the companies' shell offices elsewhere. The co-conspirators would then return the calls, posing as the phony trade and

bank references. After establishing credit, the companies would place orders for computers, and then resell the computers through co-defendant Nicholas Krallis, but they would never pay the original suppliers.

Kimbrew obtained a driver's license in the false name of Carlton Cochran and used that identity to set up a bank account into which proceeds from the computer sales were deposited. The Cochran account was used to hold a portion of the funds and to distribute proceeds to Williams and Springs.

In July 1997, investigators arranged for a controlled delivery and arrested Williams and Springs. A grand jury thereafter returned an indictment against Kimbrew, Williams, Springs, Krallis, and one other co-defendant, Herbert Powell. The indictment charged Kimbrew with one count of conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 371 ("Count One"), one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count Two"), and one count of wire fraud, in violation of 18 U.S.C. § 1343 ("Count Three").

Williams and Springs pled guilty and testified against Kimbrew at trial. The jury convicted Kimbrew of Count Two, but acquitted him of Counts One and Three.

The district court sentenced Kimbrew in March 2004. Although the government urged the district court to find the amount of loss to be $678,000 (the total loss from the scheme), the district court, at Kimbrew's urging, found a loss amount of approximately $140,000, based on amounts deposited into the Cochran account. The district court also applied three two-level enhancements to Kimbrew's sentence for (1) receiving and selling stolen property (U.S.S.G. § 2B1.1(b)(4)); (2) use of sophisticated means (U.S.S.G. § 2B1.1(b)(8)(A) & (C)); and (3) role in the offense (U.S.S.G. § 3B1.1(c)). This yielded a guideline range of 51-63 months, and the district court sentenced Kimbrew to the statutory

maximum of 60 months. Kimbrew appeals his conviction and sentence.

## STANDARD OF REVIEW

Whether a defendant's double jeopardy rights have been violated is a question of law reviewed de novo. *United States v. McClain*, 133 F.3d 1191, 1193 (9th Cir. 1998). This court reviews the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error. *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997).

## DISCUSSION

### I.  Double Jeopardy

[1] Kimbrew first argues that his conviction violates the Double Jeopardy Clause because the government improperly subdivided a single criminal conspiracy into multiple counts. "The Double Jeopardy Clause prohibits the imposition of multiple trials, convictions and punishments for the same offense." *United States v. Arlt*, 252 F.3d 1032, 1035 (9th Cir. 2001) (en banc). In determining what constitutes the "same offense" in cases like this, involving the general conspiracy statute, 18 U.S.C. § 371, we must first consider the elements of the specific offense that the defendant is alleged to have conspired to commit. *Id.* at 1038. We then apply the *Blockburger* test to the two conspiracy counts to determine "whether each provision requires proof of an additional fact which the other does not." *Id.* at 1036 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

[2] The *Blockburger* test focuses on the statutory elements of each offense, not on the actual evidence presented at trial. *Illinois v. Vitale*, 447 U.S. 410, 416 (1980). Thus, it matters not that there is "substantial overlap" in the evidence used to

prove the two offenses, so long as they involve different statutory elements. *United States v. Cuevas*, 847 F.2d 1417, 1429 (9th Cir. 1988) (citation omitted).

**[3]** Kimbrew was charged in Count One with violating § 371 by conspiring to commit mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343. Kimbrew was charged in Count Two with conspiracy to launder money — that is, conspiracy to conduct financial transactions involving the proceeds of a specified unlawful activity — in violation of 18 U.S.C. § 1956(h). Although both conspiracies concerned the same underlying fraud, the conspiracies were legally distinct and each required proof of something the other did not.

**[4]** To convict on Count One, the jury was required to find an agreement to use the mail or interstate wire communications to execute the scheme to defraud, whereas to convict on Count Two, the jury had to find an agreement to conduct a financial transaction involving the proceeds of mail or wire fraud. Thus, the acts necessary to establish a conspiracy to commit mail and wire fraud will not necessarily also support a conviction for conspiracy to launder money, or vice versa. *See Arlt*, 252 F.3d at 1038-39 (conspiracy to violate drug laws and conspiracy to launder drug money separate offenses); *Cuevas*, 847 F.2d at 1429 (drug conspiracy and conspiracy to fail to report export of currency obtained from the drug conspiracy separate offenses). Nor did the differences between the counts escape the jury, which acquitted Kimbrew of the wire fraud counts, while convicting him of conspiracy to commit money laundering. Kimbrew's conviction does not violate the Double Jeopardy Clause and is hereby affirmed.

## II. **Sentencing**

**[5]** Kimbrew also challenges the district court's enhancement of his sentence under the Sentencing Guidelines. Even though the Guidelines are no longer mandatory after the

Supreme Court's decision earlier this year in *United States v. Booker*, 125 S. Ct. 738 (2005), the district court should still consult them for advice as to the appropriate sentence, *id.* at 767, and we therefore address the merits of Kimbrew's argument with respect to the enhancement for receipt of stolen property.

**[6]** The Guidelines permit a two-level enhancement "[i]f the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property." U.S.S.G. § 2B1.1(b)(4). The district court did not make any specific factual findings in this regard, but apparently accepted the government's argument that Kimbrew was in the business of receiving and selling stolen property because he was involved in receiving and selling the computers that he had obtained by fraud.

**[7]** However, nearly every circuit that has addressed the meaning of this enhancement has agreed "that a thief who sells goods that he himself has stolen is not in the business of receiving and selling stolen property." *United States v. Maung*, 267 F.3d 1113, 1118 (11th Cir. 2001) (quotation marks omitted); *see also United States v. McMinn*, 103 F.3d 216, 219-21 (1st Cir. 1997) (guideline not meant to apply to defendant who sells only property he has stolen); *United States v. Sutton*, 77 F.3d 91, 94 (5th Cir. 1996) (enhancement "a punishment for fences, people who buy and sell stolen goods, thereby encouraging others to steal, as opposed to thieves who merely sell the goods which they have stolen"); *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir. 1990) ("a person in the business of receiving and selling stolen property is a professional fence and not a person who sells property that he has already stolen").[1] The courts that

---

[1]The Eighth Circuit has affirmed the use of the enhancement where the thief delivered goods he stole to an auction house and then split the proceeds with the auction house. *See United States v. Collins*, 104 F.3d 143, 144 (8th Cir. 1997). However, Collins did not argue that the enhancement was inappropriate because he had stolen the goods, nor did the court explicitly address that question, focusing instead on Collins's role as an integral part of the auction house scheme. *Id.*

have engaged in an in-depth analysis of this provision have generally based their views on three factors: (1) the plain language of the enhancement, which requires both "receiving" and "selling" stolen property;[2] (2) the historical evolution of the guidelines in this area, which have traditionally punished fencing differently than mere theft; and (3) the underlying purpose of the enhancement, i.e., to increase the penalty because the ready availability of a fence to dispose of goods may promote theft crimes. *See United States v. Saunders*, 318 F.3d 1257, 1267-1269 (11th Cir. 2003); *McMinn*, 103 F.3d at 219-22. This analysis is sound, and we adopt it today.

Although the government did not even cite or attempt to address this authority in its brief, at argument the government contended that this circuit has previously rejected the notion that a thief cannot receive the enhancement for selling his own stolen goods in *United States v. Zuniga*, 66 F.3d 225 (9th Cir. 1995). In *Zuniga*, we were called upon to decide whether a defendant was "in the business" of receiving and selling stolen property. We adopted the "totality of the circumstances" test originally set forth in *United States v. St. Cyr*, 977 F.2d 698, 703 (1st Cir. 1992), and rejected the "fence" test propounded by several other circuits. *Zuniga*, 66 F.3d at 228-29. The fence test considers only whether the defendant was a person who buys and sells property stolen by others (i.e., a "fence") and whether the defendant's activities encouraged others to commit crimes. *See United States v. Warshawsky*, 20 F.3d 204, 214-15 (6th Cir. 1994). The totality approach considers numerous factors, such as the regularity of the defendant's dealings in stolen property, the sophistication of the enterprise, and the defendant's prior activities. *Zuniga*, 66 F.3d at 228-29.

---

[2]As the First Circuit noted, "statutes which criminalize 'receiving' are generally not thought to target the thief himself, but the wrongdoer who knowingly acquires the loot from or through the thief." *McMinn*, 103 F.3d at 219.

In *Zuniga*, we decided only how to determine whether a defendant is "in the business" of receiving and selling stolen property. We did *not* decide whether the enhancement could apply to a defendant who was selling property he himself had stolen, for it was not necessary for us to do so: the evidence in that case established Zuniga was selling goods stolen by others.[3] As various decisions in other circuits since *Zuniga* have made clear, there is nothing inconsistent about adopting a totality of the circumstances approach to the "in the business" question, while also requiring a defendant to be a fence — to receive and sell property stolen by others — before the enhancement applies. *See Saunders*, 318 F.3d at 1268 ("an interpretation of the enhancement requiring that the defendant be a fence is not inconsistent with our adoption of the totality of the circumstances test"); *McMinn*, 103 F.3d at 222 (explaining that the *St. Cyr* decision did not reach this question and does not support the government's argument that the enhancement could apply if the only goods distributed were those the defendant had stolen); *see also United States v. Cottman*, 142 F.3d 160, 167 n.9 (3rd Cir. 1998). In other words, the "totality of the circumstances" and "fence" tests diverge on the considerations that apply to being "in the business," but both tests operate on the predicate that the defendant is a fence. *Saunders*, 318 F.3d at 1269.

**[8]** Thus, the district court made a legal error by applying this enhancement to Kimbrew, as there was no evidence that Kimbrew dealt in property stolen by others. This error resulted in a guideline range of 51-63 months, instead of 41-51 months. Because of this error, we reverse Kimbrew's sentence and remand for resentencing.

---

[3]Indeed, the only comment on this question in *Zuniga* actually supports Kimbrew's interpretation: upholding the enhancement, we noted that "[t]he district court could reasonably conclude from the evidence presented that Zuniga was warehousing and selling merchandise *stolen by others*, i.e., fencing property, *in addition to property stolen by him*." 66 F.3d at 229 (emphasis added).

In light of our decision, we do not address Kimbrew's remaining arguments with respect to sentencing error under *Booker*. On remand, of course, the district court may entertain these arguments and should sentence Kimbrew in accordance with the Supreme Court's decision.

## CONCLUSION

Kimbrew's conviction did not violate the Double Jeopardy Clause because the two conspiracy counts each required proof of a fact the other did not. We therefore AFFIRM Kimbrew's conviction. The district court erred, however, by enhancing Kimbrew's sentence for "receiving and selling stolen property," because Kimbrew was not dealing in property stolen by others. We VACATE the sentence and REMAND FOR RESENTENCING, which should be in accordance with the Supreme Court's decision in *Booker*.