**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

SUE ELLEN STATEN,
      *Defendant-Appellant.*

No. 05-30055

D.C. No.
CR-04-00039-SEH

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
December 6, 2005—Seattle, Washington

Filed June 7, 2006
Amended August 31, 2006

Before: Ronald M. Gould and Marsha S. Berzon,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Berzon

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

10509

**COUNSEL**

June Lord, Great Falls, Montana, for defendant-appellant Sue
Ellen Staten.

William W. Mercer, United States Attorney, and Joseph E. Thaggard, Assistant United States Attorney, United States Attorney's Office, Great Falls, Montana, for plaintiff-appellee United States of America.

## ORDER

The opinion filed June 7, 2006, slip. op. 6211, and published at 450 F.3d 384 (9th Cir. 2006) is hereby amended as follows:

1.  At slip op. 6227, delete from "There is an additional reason . . . ." through to the end of Part III of the opinion.

2.  Replace deleted text with Section C in the attached amended opinion, starting with the language "There is an additional reason . . . ." through to ". . . . as determined in accord with existing case law, the enhancement must be supported by facts established by clear and convincing evidence."

No petitions for rehearing will be entertained.

## OPINION

BERZON, Circuit Judge:

*United States v. Booker* held that although district courts are no longer required to follow the United States Sentencing Guidelines ("Guidelines"), when making sentencing decisions, "the [Sentencing Reform] Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." 543 U.S. 220, 259 (2005) (citing 18 U.S.C.A. § 3553(a) (Supp. 2004)); *see also United States v. Cantrell*, 433 F.3d 1269, 1278 (9th Cir. 2006)

("[N]otwithstanding that the Guidelines are now effectively advisory, . . . district courts, while not bound to apply the Guidelines, 'should still consult them for advice as to the appropriate sentence.' " (citation omitted)). Concomitantly, as we have repeatedly held in the aftermath of *Booker*, we continue to have a duty to review district courts' required application of the Guidelines. We do so to assure that the district courts properly appreciate the advice offered by the now-advisory Guidelines before factoring that advice into their determination, under 18 U.S.C. § 3553(a), of the appropriate sentence. *See United States v. Mix*, 442 F.3d 1191, 1195 (9th Cir. 2006) ("[A]s was the case before *Booker*, the district court must calculate the Guidelines range accurately. A misinterpretation of the Guidelines by a district court effectively means that [the district court] has not properly consulted the Guidelines." (last alteration in original) (internal citations and quotation marks omitted)).

Conducting the requisite review of the post-*Booker* application of the Guidelines in this case, we conclude that the district court failed properly to take account of the appropriate factors when applying the Guidelines section 2D1.1(b)(5)(B) enhancement for creating a substantial risk of harm to human life or the environment. We therefore vacate the sentence imposed on Sue Ellen Staten and remand for resentencing.

## I.

The events which ultimately resulted in this appeal developed as follows:[1] On October 24, 2003, Sue Ellen Staten and Jennifer Gatewood rented two adjacent rooms at the Terrace Motel, numbered 8 and 9. Later that night, Staten helped to carry a microwave into room 8, where Denis K. Loftis, Gate-

---

[1]The facts recited in this section reflect, for the most part, those recited in the presentence investigation report ("PSR") prepared by the probation office for the district judge. At sentencing, Staten confirmed that she had no objections to the facts recited in the PSR.

wood's boyfriend, had assembled equipment necessary to manufacture methamphetamine. Loftis and Staten were arrested in room 8 by officers who had been tipped off to the manufacturing operation. Because of the perceived hazardous environment, the motel was evacuated. A hazardous materials disposal team seized, among other things, the following items from the rooms: "a kitchen bowl containing iodine and red phosphorus; hypodermic syringes, one of which contained a clear liquid substance; a Pyrex plate with methamphetamine residue; canning jars containing a liquid substance; razor blades; a microwave oven; a *Fry Daddy* deep fat fryer; and several 20 ounce soft drink bottles containing liquid substances." The PSR concluded that Staten had conspired with Gatewood and Loftis in several manufacturing operations, which resulted in the "produc[tion] [of] a conservative amount of one-half gram of methamphetamine" on each occasion.

Staten pleaded guilty pursuant to a plea agreement to conspiracy to manufacture methamphetamine under 21 U.S.C. §§ 841(a)(1) and 846. The PSR, prepared on July 23, 2004, prior to the issuance of *Booker*, assessed a base offense level of twelve pursuant to Guidelines section 2D1.1(c)(14) and increased the offense level to twenty seven pursuant to section 2D1.1(b)(5)(B). The latter provides for an increase of three offense levels or, if the resulting increase is less than twenty seven, an increase of the offense level to twenty seven "[i]f the offense involved (i) the manufacture of . . . methamphetamine; and (ii) *created a substantial risk of harm to (I) human life . . . ; or (II) the environment*." U.S. Sentencing Guidelines Manual § 2D1.1(b)(5)(B) (emphases added).[2] The PSR also

---

[2]The presentence investigation report relied on the 2003 edition of the Guidelines. Staten's sentencing occurred on January 27, 2005, at which point the 2004 edition of the Guidelines was in effect. According to the Guidelines, a district court "shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S. Sentencing Guidelines Manual § 1B1.11(a) (2004); *see United States v. Benitez-Perez*, 367 F.3d

recommended a two-level decrease for acceptance of responsibility pursuant to section 3E1.1(a) and a one-level decrease for timely notifying government of her intention to plead guilty pursuant to section 3E1.1(b). Because Staten fell into criminal history category III, the PSR concluded that a Guidelines imprisonment range of sixty-three to seventy-eight months was appropriate. *See id.* ch. 5, pt. A (Sentencing Table).

The sentencing hearing occurred just after *Booker* was decided. In light of *Booker*, the district court treated the Guidelines as "advisory only." The district court allowed argument about the PSR at the sentencing hearing and invited counsel to raise any other pertinent information.

In response to that invitation, both parties submitted expert reports with regard to the substantial risk of harm issue. Staten's expert based his brief report on "the evidence and video tape in this case." While "not disput[ing] [that] there exist[ ] potential dangers for all clandestine methamphetamine labs," Staten's expert

> [could not] state, within a reasonable degree of scientific certainty, based upon the evidence found, evidence analyzed, lack of chemical odor notation and the video tape, any "real" hazards or dangers existed at the scene that would pose a significant threat or

1200, 1205 (9th Cir. 2004) ("A district court must apply the version of the Sentencing Guidelines in effect on the date of sentencing, unless that would pose an *ex post facto* problem."). It seems, therefore, that the wrong version of the Guidelines was applied at Staten's sentencing. The 2004 amendments to the Guidelines, however, did not substantively change section 2D1.1(b)(5), or its Application Note; subdivision (b)(5) simply was redesignated as subdivision (b)(6). *See* U.S. Sentencing Guidelines Manual § 2D1.1 hist. note (2004); *id.* app. C, amend. 667 (2004). As the version used thus does not matter, we refer, as do the parties, to the 2003 edition of the Guidelines.

danger to any persons other than the cook and those present in the room.

The government's expert presented a report which detailed various "hazards associated with methamphetamine manufacture." According to this report, such hazards include the potential for flash fire caused by the atmospheric concentration of alcohol; "[the health hazard and dangers] associated with iodine tinctures or [the] handling of iodine crystals"; the generation of hydriodic acid, a respiratory irritant; the generation of hydriodic acid fumes and phosphine gas, both of which are potentially lethal; the possibility that the coffee or paint filters used to collect solid red phosphorus might auto-ignite; the dangers associated with handling caustic lye (sodium hydroxide); the need to dispose of chemical waste generated by the manufacturing process; the potential for others to be exposed to improperly disposed of waste; and the potential for subsequent occupants of the location of the manufacture to be "unwitting[ly] expos[ed] to methamphetamine residue and other hazardous by-products of the manufacturing process."

At sentencing, Deputy Jergens testified that while he was searching the motel room he found what appeared to be an uncovered container of iodine and an uncovered container of Coleman fuel. He also testified that between three and five people were evacuated from the motel, including two from an adjacent room.

Staten objected to the section 2D1.1(b)(5)(B) enhancement on the ground that the *Booker* advisory Guidelines remedy may not be applied to a pre-*Booker* crime and so, under *Blakely v. Washington*, 542 U.S. 296 (2004), the facts supporting the enhancement must be proved beyond a reasonable doubt. She also maintained that on any burden of proof, the district court did not properly determine that the enhancement was supported by the established facts. The district court rejected both arguments, observing that any Guidelines calcu-

lation was "only an advisory component" of the factors it was obliged to consider under *Booker*. The district court then explained that, in its view, the substantial risk of harm enhancement was applicable. After recognizing that under *Booker* it was to consider all the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Staten to sixty-three months imprisonment with three years of supervised release to follow, a sentence within the calculated advisory Guidelines range.

Staten now reasserts the objections she raised at her sentencing: She argues, first, that the *Booker* advisory Guidelines regime cannot apply to her, as she committed her crime before *Booker* was decided, and that the failure to determine whether the facts supporting the enhancement were proven beyond a reasonable doubt therefore violated her due process rights. Second, she argues that the district court erred in determining that the evidence presented at the sentencing hearing and the facts established in the PSR support application of the section 2D1.1(b)(5)(B) substantial risk of harm enhancement.

## II.

"We review ex post facto challenges to sentencing decisions de novo." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997); *see also Hunter v. Ayers*, 336 F.3d 1007, 1011 (9th Cir. 2003). While the constitutional prohibition against ex post facto laws "by its terms, applies only to changes in the law resulting from legislative or executive action, . . . the [Supreme] Court has extended similar principles to the Due Process Clause to cover 'unforseeable [judicial] construction of a criminal statute.' " *United States v. Dupas*, 419 F.3d 916, 920 n.3 (9th Cir. 2005) (second alteration in original) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354-55 (1964)), *cert. denied*, 126 S. Ct. 1484 (Mar. 6, 2006). Staten asserts such a due process argument, which we review as we would a traditional ex post facto argument.

Under *Booker*, we review the ultimate sentence imposed under the factors set forth in 18 U.S.C. § 3553(a) for "reasonableness." *Cantrell*, 433 F.3d at 1279. If, however, "there was material error in the Guidelines calculation that serves as the starting point for the district court's sentencing decision, we will remand for resentencing pursuant to 18 U.S.C. § 3742(f), without reaching the question of whether the sentence as a whole is reasonable in light of § 3553(a)." *Id.* at 1280; *see also Mix*, 442 F.3d at 1195 ("If the district court incorrectly construed the Sentencing Guidelines, we must vacate the sentence and remand for resentencing.").

"[W]e . . . review 'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [a] case for abuse of discretion, and the district court's factual findings for clear error." *Cantrell*, 433 F.3d at 1279 (alteration in original) (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)).[3]

---

[3]Prior to *Booker*, there was conflict in our case law regarding the standard of review for a district court's *application* of the Guidelines to a particular sentence. Some pre-*Booker* decisions employed an abuse of discretion standard. *See, e.g.*, *United States v. Alexander*, 287 F.3d 811, 818 (9th Cir. 2002) (" 'We review the district court's application of the Sentencing Guidelines to the facts of a particular case for abuse of discretion.' " (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 824 (9th Cir. 1999))); *United States v. Robinson*, 94 F.3d 1325, 1327 (9th Cir. 1996). Other pre-*Booker* decisions reviewed a district court's application of the Guidelines de novo. *See, e.g.*, *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc) ("The district court's interpretation and application of the Sentencing Guidelines are reviewed de novo."); *United States v. Gonzalez*, 262 F.3d 867, 869 (9th Cir. 2001) (per curiam); *Ortland*, 109 F.3d at 543.

This conflict has continued post-*Booker*. In *United States v. Smith*, we stated that post-*Booker*, "we review 'the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion' " 424 F.3d 992, 1015 (9th Cir. 2005) (quoting *Kimbrew*, 406 F.3d at 1151), *cert. denied*, 126 S. Ct. 1477 (Mar. 6, 2006) *and sub nom. Bates v. United States*, 126 S. Ct. 1770 (Apr 17, 2006). Both *Smith* and *Kimbrew*, though

### III.

### A.

Staten maintains that the Due Process clause "prohibits courts from applying the *Booker* remedy to the disadvantage of any criminal defendant whose crime was committed before *Booker* was decided," and that she therefore is entitled to the benefit of the Sixth Amendment rule that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244; *see also Blakely*, 542 U.S. at 301 (" 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000))).

**[1]** Our decision in *Dupas* forecloses this argument. *See* 419 F.3d at 919-21 (holding that the application of *Booker*'s remedial holding to sentencing determinations on direct

---

decided post-*Booker*, reviewed sentences imposed under the pre-*Booker* mandatory Guidelines regime. *See Smith*, 424 F.3d at 1017; *Kimbrew*, 406 F.3d at 1154. *Mix*, a "true" post-*Booker* case, follows the abuse of discretion standard set forth in *Smith*. 442 F.3d at 1195 ("We review the application of the Sentencing Guidelines to the facts of the case for abuse of discretion and factual findings for clear error." (*citing Smith*, 424 F.3d at 1015)). In contrast, one post-*Booker* decision indicates that the applicable standard of review is de novo. *See United States v. Williamson*, 439 F.3d 1125, 1137 n. 12 (9th Cir. 2006) ("We review the interpretation and application of the Guidelines de novo.").

As we would conclude that the district court here erred in its application of the Guidelines under *any* standard of review, we save for another day resolution of the standard of review for application of the Guidelines after *Booker*.

review does not violate retroactivity due process concerns), *cert. denied*, 126 S. Ct. 1484 (Mar. 6, 2006); *see also Mix*, 442 F.3d at 1198-99 (following *Dupas*). Like Dupas, when Staten committed her crime she had "sufficient warning of the potential consequences of [her] actions to satisfy . . . due process concerns." *Dupas*, 419 F.3d at 921 (holding that fair warning exists where the defendant had notice at the time of the offense "that his sentence could be . . . set within the applicable statutory maximum").

## B.

[2] Staten's sentence was enhanced in accord with section 2D1.1(b)(5)(B) of the Guidelines. That section provides:

> If the offense (i) involved the manufacture of . . . methamphetamine; and (ii) created a substantial risk of harm to (I) human life other than a life described in subdivision (C); or (II) the environment, increase [the offense level] by **3** levels. If the resulting offense level is less than level **27**, increase to level **27**.

U.S. Sentencing Guidelines Manual § 2D1.1(b)(5)(B). Application Note 20(A), which applies to section 2D1.1(b)(5)(B), provides:

> (A) *Factors to consider*. In determining, for purposes of subsection (b)(5)(B) or (C), whether the offense created a substantial risk of harm to human life or the environment, the court *shall* include consideration of the following factors:
>
> (i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(ii) The manner in which hazardous or toxic sub-
stances were disposed, and the likelihood of release
into the environment of hazardous or toxic sub-
stances.

(iii) The duration of the offense, and the extent of
the manufacturing operation.

(iv) The location of the laboratory (*e.g.*, whether
the laboratory is located in a residential neighbor-
hood or a remote area), and the number of human
lives placed at substantial risk of harm.

*Id.* § 2D1.1(b)(5)(B) cmt. n.20(A) (emphasis added).

Staten submits that "there was no finding made in accor-
dance" with Note 20(A). We agree, and hold that because the
district court failed to take Note 20(A) into account, a remand
for resentencing is necessary so that the district court can
make the factual determinations required by that note.

**[3]** According to the Guidelines, the commentary that
accompanies a given section "may interpret the guideline or
explain how it is to be applied," and "[f]ailure to follow such
commentary could constitute an incorrect application of the
guidelines." *Id.* § 1B1.7. The Guidelines, including enhance-
ments, are ordinarily applied in light of available commen-
tary, including application notes. *See Stinson v. United States*,
508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines
Manual that interprets or explains a guideline is authoritative
unless it violates the Constitution or a federal statute, or is
inconsistent with, or a plainly erroneous reading of, that
guideline."); *United States v. Allen*, 434 F.3d 1166, 1173 (9th
Cir. 2006) ("The application notes to the Guidelines are
exactly that — notes about when a particular Guideline
applies and when it does not."); *United States v. Lopez-
Garcia*, 316 F.3d 967, 970 (9th Cir. 2003) ("We are bound to
follow the application notes."); *United States v. McKinney*, 15

F.3d 849, 852 n.8 (9th Cir. 1994) (noting that "the district court was . . . obliged to assess [the defendant's] conduct in light of the 'appropriate considerations' listed in the application notes").

**[4]** Note 20(A) uses mandatory language. *See* U.S. Sentencing Guidelines Manual § 2D1.1(b)(5)(B) cmt. n.20(A) (noting that "for purposes of subsection (b)(5)(B) . . . , the court *shall* include consideration of the following factors" (emphasis added)); *see also United States v. Layne*, 324 F.3d 464, 469 (6th Cir. 2003) (noting that 2001 amendments to the Guidelines "made consideration of the factors set out in the Application Notes to [the substantial risk of harm enhancement] mandatory"). The district court, however, failed for the most part properly to consult the mandatory Note 20(A) factors, focusing instead primarily on factors present in any manufacture of methamphetamine: The court at sentencing observed that the report submitted by the government's expert showed that (1) *generally*, the manufacture of methamphetamine creates a hazard to the health of the person engaged in such manufacture and (2) studies had established that the manufacture of methamphetamine *can* leave detectable traces in the location of manufacture, creating a potential risk of exposure to later occupants. The court further observed that Staten's own expert had confirmed the "potential danger for *all* clandestine methamphetamine labs." (emphasis added). Based on these observations, the court stated:

> I don't see anything in that subdivision which, as we have noted, is, in its advisory capacity to this court, that suggests that a hazard to the cook is excluded by the process or that the hazard of handling methamphetamine that has been manufactured is excluded from the implications of the increase contemplated.

> And I am taking as reasonable evidence the declaration from the statement of Mr. Ely that the carrying

out of this process in a closed environment such as a hotel room, would put future occupants at the risk of unwitting exposure to the residues which are well-known to exist where such an operation has been carried out.

Therefore, under the guideline program, and emphasizing that this is an advisory matter only, it is my determination that the guideline calculation increase to an offense level of 27 is in fact appropriate in this case.

**[5]** The general observations made by the district court do not constitute adequate consideration of factors due under Note 20(A). Note 20(A) requires analysis of whether, and the extent to which, the specified considerations pertain on the facts of the particular case. The language of each Note 20(A) factor focuses on the circumstances involved in the prosecution at hand, not on generic dangers posed by methamphetamine manufacture: The note requires that the district court look to the specific "quantity of any chemicals or hazardous or toxic substances found"; "the manner in which the chemicals or substances were stored"; "the manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment"; "the duration of the offense, and the extent of the manufacturing operation"; and "the location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm." U.S. Sentencing Guidelines Manual § 2D1.1(b)(5)(B) cmt. n.20(A). As each enumerated consideration is cast in terms that demand inquiry into the details of the particular case, the district court may not rest application of the enhancement on facts that are necessarily common to most or every manufacture.

This focus on the specific characteristics of the particular manufacturing operation is fully consistent with the pertinent

guideline. Section 2D1.1(b)(5)(B) applies where there is "the manufacture of . . . methamphetamine . . . *and* . . . a substantial risk of harm." *Id.* § 2D.1.1(b)(5)(B) (emphasis added). The conjunction indicates that the "substantial risk of harm" must be in addition to those inherent in the manufacture of methamphetamine.

**[6]** Here, the district court's reasons for applying the enhancement were, for the most part, not specific in nature, as required by Note 20(A). The court noted that *all* clandestine methamphetamine labs create a potential for danger, a consideration that is not pertinent under Note 20(A). The court then emphasized that nothing in the language of the enhancement precluded taking into account the risk posed to persons engaged in the manufacture of the drug or those handling the final product. The latter consideration, however, is *always* true for methamphetamine manufacture — someone will always be producing the drug and someone will always be handling the end product. The purpose of Note 20(A) — which, under section 2D1.1(b)(5)(B), applies exclusively to the production of methamphetamine and amphetamine — is to distinguish specific harms from generic ones, so as to justify a higher sentence than ordinarily attaches to the manufacture of those drugs. The district court's reliance on generic harms, such as the usual potential for harm to "the cook," was therefore improper.

The only case-specific factor spelled out in Note 20(A) that the district court mentioned was "the location of the laboratory," here, a motel room. Although the consideration that potential future motel room occupants who might come into contact with methamphetamine traces is case-specific, section 2D1.1(b)(5)(B) requires that the risk to human life and the environment must be "substantial" for the enhancement to apply. Note 20(A) specifies considerations pertinent to the substantiality requirement, including the quantity of toxic substances found, the manner in which they were stored, and the duration and extent of the manufacturing operation. The dis-

trict court did not mention these considerations, even though the evidence showed an operation of short duration and extent. Yet, these factors are pertinent to whether the location-specific danger identified — the danger that future occupants might inhale or ingest methamphetamine residue — is substantial.

**[7]** We conclude that the district court's application of the section 2D1.1(b)(5)(B) enhancement, based in part on generic factors and in part on inadequate consideration of the Note 20(A) factors, constitutes reversible legal error.[4] *See McKinney*, 15 F.3d at 853 n.8 (finding district court's failure to consider application note factors to constitute reversible error).

## C.

There is an additional reason that the district court's factual findings were inadequate: The burden of proof standard applied to those findings was too low.

**[8]** In the aftermath of *Booker*, this circuit held that, as before *Booker*, the preponderance of the evidence standard generally satisfies due process concerns. We have indicated, as well — also as before *Booker* — that a heightened burden may sometimes be required post-*Booker* to satisfy due process concerns. *See United States v. Kilby*, 443 F.3d 1135, 1140 n.1 (9th Cir. 2006) (noting that "[i]n some cases, where a sentencing factor would have an extremely disproportionate effect on the sentence, the government may have to satisfy a clear and convincing standard of proof"); *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005) (noting, in a post-*Booker*

---

[4]We do not mean to say that the district court must find each factor mentioned in Note 20(A) satisfied to apply the section 2D1.1(b)(5)(B) enhancement. All the district court is obliged to do is consider the factors and, applying those that are relevant, determine whether the *particular* manufacturing operation created a substantial risk of harm to human life or the environment in light of those relevant factors.

review, that "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing," but, where an extremely disproportionate sentence results from the application of an enhancement, " 'the government may have to satisfy a "clear and convincing" standard' " (quoting *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999))), *cert. denied*, 126 S. Ct. 2959 (June 26, 2006).[5] Also, in *United States v. Lynch*, a post-*Booker* case that does not mention *Booker*, we reiterated the pre-*Booker* rule that "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the conviction, the government must prove such a factor by clear and convincing evidence." 437 F.3d 902, 916 (9th Cir. 2006) (en banc) (per curiam). None of these cases, however, directly determined whether the clear and convincing standard of proof for certain cases survived *Booker*.

The government recognizes that the fifteen-level enhancement that the district court applied had a disproportionate impact on Staten's sentence "since [the enhancement] increased [her] offense level by more than four levels and more than doubled her sentence." The government accordingly posits that the facts underlying the sentence enhancement had to be proved by clear and convincing evidence, instead of a preponderance of the evidence, relying on pre-*Booker* case law to that effect.[6] *See United States v. Peyton*, 353 F.3d 1080, 1088 (9th Cir. 2003) ("The application of the preponderance of the evidence standard, as opposed to the

---

[5]In *Dare*, however, we declined to extend this heightened disproportionate impact standard to "statutory mandatory minimum sentence[s]." 425 F.3d at 642.

[6]After the publication of the original opinion in this case, the government informed us that it has reconsidered its position and intends to argue in future cases that "all factual findings under the Guidelines should be made by preponderance of the evidence — and that, in light of *Booker*, this Court's line of cases to the contrary is no longer applicable." The government did not, however, seek rehearing of this case and does not disagree with our description of the position it took in this appeal.

clear and convincing standard, violate[s] . . . due process rights only if it le[ads] to enhancements that ha[ve] an 'extremely disproportionate effect on the sentence relative to the offense of conviction.' " (quoting *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000))); *United States v. Jordan*, 256 F.3d 922, 927-29 (9th Cir. 2001) (noting that enhancements that have a disproportionate impact on sentences must be established by clear and convincing evidence).

We agree with the suggestion in our post-*Booker* cases and with the government's position in this case that the clear and convincing standard still pertains post-*Booker* for an enhancement applied by the district court that has an extremely disproportionate effect on the sentence imposed.

**[9]** As set forth in *Miller v. Gammie*, "a three-judge panel is free to reexamine the holding of a prior panel in light of an inconsistent decision by a court of last resort on a closely related, but not identical issue," 335 F.3d 889, 899 (9th Cir. 2003) (en banc), when "the relevant court of last resort . . . [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," *id.* at 900. This case presents the question whether *Booker* is "clearly irreconcilable" with our precedent dictating that in certain circumstances, "the Due Process Clause requires the application of a clear and convincing evidence standard when an enhancement based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence." *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000); *see also Dare*, 425 F.3d at 642-43. We conclude that it is not.

*Booker*, like its predecessor *Blakely v. Washington*, 542 U.S. 296 (2004), does not discuss the role that standards of proof play in criminal sentencing, nor does it discuss at all the due process concerns that such standards are intended to satisfy. Instead, the constitutional ruling in *Booker*, like that in *Blakely*, focused solely on the need to conform comprehen-

sive sentencing schemes to the jury trial requirement of the Sixth Amendment. *See Booker*, 543 U.S. at 232-33; *Blakely*, 542 U.S. at 301-02, 312-13. As nothing in the reasoning of the constitutional opinion in *Booker* turns on due process concerns or burdens of proof, nothing in that opinion is irreconcilable with our heightened standard of proof cases.

Once the *Booker* constitutional majority held that the mandatory Guidelines violate the Sixth Amendment jury trial guarantee, however, the *Booker* remedial opinion devised a sentencing scheme by severing some portions of the Sentencing Reform Act. One component of that sentencing scheme is advisory rather than mandatory Guidelines. *See Booker*, 543 U.S. at 245-46. Our question is thus whether the reformation to advisory Guidelines is irreconcilable with our prior case law concerning a heightened standard of proof at sentencing in limited circumstances.

Under the advisory Guidelines, district courts are free to make factual determinations not made by the jury and may base their ultimate decisions regarding the length of a convicted criminal's sentence on those determinations. Also, district courts are ordinarily required at least to consult the Guidelines, and to make any factual findings required in doing so. *See id.* (noting that *Booker*'s remedy "requires a sentencing court to consider Guidelines ranges, but permits the court to tailor the sentence in light of other statutory concerns as well" (citations omitted)); *Cantrell*, 433 F.3d at 1279 (noting the "continuing [statutory] duty of district courts to consult the Guidelines"). In this case, for example, the district court sentenced Staten by applying the "substantial risk of harm" Guidelines enhancement based on facts not admitted by Staten in her plea but rather found by the court at the sentencing hearing, based on post-plea submission of evidence and expert testimony. On remand the court may determine to do so again if the requisite facts are established.

Our prior case law concerning a heightened standard of review in limited circumstances for facts determinative of the

sentence applies precisely to those situations in which the facts found *actually* are determinative of the sentence given. In *United States v. Restrepo*, for example, we held that generally "due process does not require a higher standard of proof than preponderance of the evidence to protect a convicted defendant's liberty interest in the accurate application of the Guidelines," 946 F.2d 654, 661 (9th Cir. 1991) (en banc), but recognized that an exception to this general rule might be required "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," *id.* at 659; *see also Jordan*, 256 F.3d at 930 ("It is now settled that when a sentencing factor has an extremely disproportionate impact on the sentence relative to the offense of conviction, due process requires that the government prove the facts underlying the enhancement by clear and convincing evidence."). Neither of these explanations of the heightened standard nor any other of which we are aware turns on whether the district court's determination to impose an enhancement based on certain facts was discretionary or mandatory, but simply on the consideration that the factual finding was, as it turned out, *actually* determinative.

Indeed, our heightened standard on sentencing due process jurisprudence traces back to a case, *United States v. Kikumura*, in which the reliance on disputed facts to greatly increase a sentence was discretionary rather than mandatory. 918 F.2d 1084 (3d Cir. 1990);[7] *see Valensia*, 222 F.3d at 1179 (discussing *Kikumura*); *Restrepo*, 946 F.2d at 656 n.1 (discussing *Kikumura*). *Kikumura* concerned a sentence that departed upward by many years from the mandatory Guidelines sentence, in the exercising of the district court's discretion to do so. 918 F.2d at 1097-98; *see Koon v. United States*, 518 U.S. 81, 92 (1996) (noting district court authority to exer-

---

[7]A Third Circuit panel recently overruled *Kikumura*, but the panel's opinion has been withdrawn and en banc review granted. *See United States v. Grier*, 449 F.3d 558, 570 (3d Cir. 2006), *withdrawn & reh'g en banc granted*, 453 F.3d 554 (3d Cir. 2006).

cise discretion and depart from Guidelines); *United States v. Menyweather*, 447 F.3d 625, 630 (9th Cir. 2006) (noting that discretionary nature of district court's authority to depart from Guidelines). The Third Circuit explained in *Kikumura* that while "less procedural protection is so clearly appropriate in the majority of sentencing cases," where the enhancement represents the overwhelming proportion of the punishment imposed, "a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations." 918 F.2d at 1100-01; *see id.* at 1099 ("Though long recognized as a practical necessity, real offense sentencing can create the potential for significant unfairness. This is so because every factual consideration deemed relevant for sentencing purposes must be established through a collateral, post-verdict adjudication at which the applicable procedural protections are significantly lower than those applicable at the trial itself."). To accommodate these concerns, the Third Circuit crafted a resolution, adopted by this circuit, under which a district court is required to "ratchet up certain, though not necessarily all, of the procedural protections afforded a defendant at sentencing, so as more closely to resemble those afforded at trial," by applying the clear and convincing evidence standard to sentencing factors that disproportionately impact the overall sentence. *Id.* at 1101.

As noted, our prior clear and convincing evidence sentencing case law, like *Kikumura*, focused on the *actual* effect a given fact had on the sentence that the district court ultimately imposed, not on whether the district court was *required* to give a fact it found the effect it did. Additionally, we have continued, after *Booker*, to impose the preponderance of the evidence standard, as a general baseline, "[to] resolve factual disputes at sentencing." *Kilby*, 443 F.3d at 1140. This continued practice confirms that, as one would expect, due process continues to play a critical role with regard to the factual determinations inherent in criminal sentencing; otherwise, no standard of proof whatever would be necessary. And because

facts found by the district court may still have an *actual* disproportionate impact on the sentence ultimately imposed, the due process concerns which animated our adoption of the clear and convincing standard in such limited instances have not evaporated.

[10] In short, neither the holdings nor the reasoning of our prior case law concerning heightened burdens of proof at sentencing are irreconcilable with *Booker.* We hold, accordingly, that this circuit's established rule, requiring facts found in support of Guidelines enhancements that turn out to have a disproportionate impact on the ultimate sentence imposed to be established by clear and convincing evidence, continues to govern sentencing decisions. On remand, therefore, if the application of section 2D1.1(b)(5)(B) again has a disproportionate impact on Staten's ultimate sentence as determined in accord with existing case law, the enhancement must be supported by facts established by clear and convincing evidence.

## IV.

[11] We vacate the imposed sentence and remand to the district court for resentencing in order that it have the opportunity to consider whether the section 2D1.1(b)(5)(B) enhancement is applicable in light of Note 20(A).

**VACATED and REMANDED.**