UNITED STATES of America,
Plaintiff–Appellee,

v.

Sabino GONZALEZ–SANCHEZ, a/k/a
Francisco Javier Sanchez–Luna, a/k/a
"Paco", Defendant–Appellant.

No. 91–30000.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 9, 1992.*

Decided Jan. 17, 1992.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John E. Storkel, Storkel & Grefenson, Salem, Or., for defendant-appellant.

Kenneth C. Bauman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before BROWNING, NELSON and CANBY, Circuit Judges.

PER CURIAM:

Sanchez–Luna[1] appeals his sentence of forty-six months, imposed after he pled guilty to distributing heroin and possessing heroin with intent to distribute. He claims his base offense level was improperly increased by two levels when the court converted cash found in his residence to its equivalent in heroin.

### Background

Sanchez–Luna sold 25.01 grams of heroin to an undercover agent, for which he was

---

1. We refer to Gonzalez–Sanchez by his true name.

paid $2700. Agents who later executed a search warrant on Sanchez–Luna's residence found him flushing the toilet; balloons containing 3.49 grams of heroin were on the floor around the toilet. The agents also found 1.67 grams of cocaine, drug records, two guns and $1541 in United States currency.

Although the probation officer who prepared the presentence report detailed Sanchez–Luna's involvement in the drug dealing efforts of his friend Zarazua–Lopez, another subject of the undercover operation that netted Sanchez–Luna, the officer did not hold Sanchez–Luna responsible for the drugs sold by Zarazua–Lopez, concluding that of the "218.87 grams of heroin and 1.67 grams of cocaine seized during the course of the investigation," Sanchez–Luna was "responsible for the possession and delivery of 28.41 grams of heroin." [2] Presentence Report at 5. The probation officer further found that because the average wholesale price of an ounce of heroin was $2700, the $1541 seized in Sanchez–Luna's residence was the equivalent of 14 grams of heroin. *Id.* The officer deemed Sanchez–Luna responsible for 42.49 grams.[3] *Id.* He therefore recommended a base offense level of 20.[4] *Id.* at 6.

---

**2.** The 28.41 grams apparently represents a miscalculation of the sum of the 25.01 grams Sanchez–Luna sold to the agent and the 3.49 grams found in his residence, which actually add up to 28.5 grams. The .09 gram difference does not affect the outcome of our disposition.

**3.** The officer appears to have miscalculated here as well. 28.41 grams plus 14 grams equals 42.41, not 42.49 grams. Again, the difference is immaterial to the outcome of the case.

**4.** Distribution and possession with intent to distribute at least 20 but less than 40 grams of heroin result in a base offense level of 18. U.S.S.G. § 2D1.1(c)(13). Distribution and possession with intent to distribute at least 40 but less than 60 grams of heroin result in a base offense level of 20. U.S.S.G. § 2D1.1(c)(12).

All Sentencing Guidelines cited are from the versions in effect on the date Sanchez–Luna was sentenced. *See United States v. Turner,* 898 F.2d 705, 709 n. 1 (9th Cir.1990).

At sentencing, Sanchez–Luna objected to the conversion of the $1541 into 14 grams of heroin. Government counsel offered three reasons why the probation officer had been "generous" in adding only 14 grams. The district court decided that "[f]or the reasons stated by" government counsel, she would not alter the recommendation of the presentence report. We consider each of the reasons proffered.

### A. Conversion of $1541 into 14 Grams of Heroin

■ The government argued to the district court, and argues on appeal, that the district court could adopt the probation officer's recommendation that the currency be converted into its heroin equivalent under Application Note 2 to Sentencing Guideline section 2D1.4, which provides that where the amount of a drug seized does not reflect the scale of the offense, the sentencing judge may approximate the quantity involved, considering, *inter alia,* the price generally obtained for the drug and the defendant's similar drug transactions.[5] Three other circuits have relied on that Application Note to approve the conversion of seized currency into its equivalent in drugs. *United States v. Hicks,* 948 F.2d 877, 881–83 (4th Cir.1991); *United*

---

**5.** Application Note 12 to U.S.S.G. § 2D1.1 provides in pertinent part:

Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.... If the amount seized does not reflect the scale of the offense, *see* Application Note 2 of the Commentary to § 2D1.4.

U.S.S.G. § 2D1.1, comment. (n.12). Application Note 2 to section 2D1.4 provides:

Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.4, comment. (n.2).

States v. Stephenson, 924 F.2d 753, 764–65 (8th Cir.1991); *United States v. Gerante*, 891 F.2d 364, 368–70 (1st Cir.1989).

In each case, however, there was evidence of a connection between the money seized and a drug transaction. *See Hicks*, 948 F.2d 877, 882 & n. 4 (defendant admitted a "majority" of the money converted came from drug sales; court determined there was "ample evidence on which the district court could have found that all of the money was the proceeds of drug transactions"); *Stephenson*, 924 F.2d at 756 (members of defendants' drug distribution ring habitually arranged their proceeds in a particular and readily identifiable manner); *Gerante*, 891 F.2d at 365–66, 368 (defendant contended money seized and converted was prepayment for cocaine he possessed when arrested, which had already been counted against him; court found sufficient indicia of reliability to support district court's conclusion money came from prior drug transaction). Here, there was no evidence at all connecting the $1541 to any drug-related activities.[6] Without a finding, based on the record and made by a preponderance of the evidence, *United States v. Restrepo*, 946 F.2d 654, 656 (9th Cir.1991) (en banc), that the currency seized was the proceeds of or otherwise linked to a drug transaction, the conversion of the cash into its drug equivalent is improper.

### B. Responsibility for Drugs Sold by Zarazua–Lopez

The government also contended below and on appeal that under Sentencing Guideline section 1B1.3, Zarazua–Lopez's drug dealing activities could be imputed to Sanchez–Luna, as they constituted acts "aided and abetted by [Sanchez–Luna], or for which [he] would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, ... or that otherwise were in furtherance of that offense[.]" U.S.S.G. § 1B1.3(a)(1). The government cites *United States v. LaFraugh*, 893 F.2d 314, 317–

18 (11th Cir.1990), which held that in calculating the base offense level of a defendant who pled guilty to conspiring to commit long distance telephone access code fraud, the district court did not err in attributing to him all losses caused by the conspiracy, rather than just those for which he was directly responsible.

■ Sanchez–Luna was not charged with, nor did he plead guilty to, conspiring with Zarazua–Lopez. Although the presentence report cites evidence that might support a finding that Sanchez–Luna and Zarazua–Lopez were conspirators, neither the probation officer nor the district court made such a finding. As noted, the probation officer found Sanchez–Luna responsible only for the drugs he himself sold and for those found in his residence.

■ Further, if the drugs for which the probation officer found Zarazua–Lopez responsible had been added to the 28.41 grams for which he found Sanchez–Luna responsible, the appropriate offense level would have been 26. U.S.S.G. § 2D1.1(c)(9) (base offense level is 26 for at least 100 but less than 400 grams of heroin). Although government counsel urged the court not to go above a base offense level of 20 by taking all the drugs into consideration, a decision to hold Sanchez–Luna responsible for some but not all of the drugs Zarazua–Lopez dealt and to choose an offense level lower than the one provided by the relevant Guidelines would require a statement that the court had made factual findings as to the existence of certain circumstances, not adequately taken into account by the Guidelines, that warranted a downward departure, and would require an explanation of the extent of the departure. *See United States v. Lira–Barraza*, 941 F.2d 745, 746, 751 (9th Cir.1991) (en banc).

### C. Drugs Flushed Down the Toilet

■ Finally, the government maintained the district court could have found San-

---

6. The government appears to argue that the $1541 may have come from the $2700 Sanchez–Luna received as a result of his sale of 25.01 grams of heroin to the undercover agent. How-

ever, those 25.01 grams have been counted against Sanchez–Luna already. Tacking on another 14 grams would constitute double-counting.

chez–Luna flushed enough drugs down the toilet when the agents came to search his residence to raise the number of grams of heroin for which he was responsible from 28.41 to the 40 or more necessary for a base offense level of 20. This argument is patently meritless. The presentence report indicates only that agents found Sanchez–Luna in the bathroom of his residence, flushing the toilet, when they entered, and that "the government contends the defendant was flushing heroin down the toilet." Presentence Report at 5. There is no evidence to support a finding that Sanchez–Luna flushed a particular amount of heroin; a finding that Sanchez–Luna flushed at least 11.59 grams would be clearly erroneous.

The sentence is VACATED and the case REMANDED for further proceedings.