Justice Alito,
with whom Justice Kennedy and Justice Breyer join, dissenting.
The California sentencing law that the Court strikes down today is indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved in United States v. Booker, 543 U. S. 220 (2005). Both sentencing schemes grant trial judges considerable discretion in sentencing; both subject the exercise of that *298 discretion to appellate review for “reasonableness”; and both — the California law explicitly, and the federal scheme implicitly — require a sentencing judge to find some factor to justify a sentence above the minimum that could be imposed based solely on the jury’s verdict. Because this Court has held unequivocally that the post-Booker federal sentencing system satisfies the requirements of the Sixth Amendment, the same should be true with regard to the California system. I therefore respectfully dissent.
I
In Apprendi v. New Jersey, 530 U. S. 466 (2000), and the cases that have followed in its wake, the Court has held that under certain circumstances a criminal defendant possesses the Sixth Amendment right to have a jury find facts that result in an increased sentence. The Court, however, has never suggested that all factual findings that affect a defendant’s sentence must be made by a jury. On the contrary, in Apprendi and later cases, the Court has consistently stated that when a trial court makes a fully discretionary sentencing decision (such as a sentencing decision under the preSentencing Reform Act of 1984 federal sentencing system), the Sixth Amendment permits the court to base the sentence on its own factual findings. See id., at 481; Blakely v. Washington, 542 U. S. 296, 305 (2004); Booker, supra, at 233; see also Harris v. United States, 536 U. S. 545, 558 (2002) (plurality opinion).[1]
*299 Applying this rule, the Booker Court unanimously agreed that judicial factfinding under a purely advisory guidelines system would likewise comport with the Sixth Amendment. Writing for the five Justices who struck down the mandatory Federal Sentencing Guidelines system, Justice Stevens stated:
“If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range----For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.” Booker, supra, at 233.[2]
In a similar vein, the remedial portion of the Court’s opinion in Booker, written by Justice Breyer, held that the Sixth Amendment permits a system of advisory guidelines with reasonableness review.[3] Justice Breyer’s opinion *300 avoided a blanket invalidation of the Guidelines by excising the provision of the Sentencing Reform Act, 18 U. S. C. § 3553(b)(1) (2000 ed., Supp. IV), that required a sentencing judge to impose a sentence within the applicable Guidelines range. See Booker, 543 U. S., at 259. As Justice Breyer explained, “the existence of § 3553(b)(1) is a necessary condition of the constitutional violation. That is to say, without this provision . . . the statute falls outside the scope of Apprendi’s requirement.” Ibid.
Under the post-jBooker federal sentencing system, “[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.” Id., at 264. In addition, sentencing courts must take account of the general sentencing goals set forth by Congress, including avoiding unwarranted sentencing disparities, providing restitution to victims, reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and effectively providing the defendant with needed educational or vocational training and medical care. See id., at 260 (citing 18 U. S. C. § 3553(a) (2000 ed. and Supp. IV)).
It is significant that Booker, while rendering the Guidelines advisory, did not reinstitute the pre-Guidelines federal sentencing system, under which “well-established doctrine barfred] review of the exercise of sentencing discretion” within the broad sentencing ranges imposed by the criminal statutes. Dorszynski v. United States, 418 U. S. 424, 443 (1974). Rather, Booker conditioned a district court’s sentencing discretion on appellate review for “reasonable *301 ness” in light of the Guidelines and the § 3553(a) factors. See Booker, supra, at 261 (“Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable”).
Although the Booker Court did not spell out in detail how sentencing judges are to proceed under the new advisory Guidelines regime, it seems clear that this regime permits— and, indeed, requires — sentencing judges to make factual findings and to base their sentences on those findings. The federal criminal statutes generally set out wide sentencing ranges, and thus in each case a sentencing judge must use some criteria in selecting the sentence to be imposed. In doing this, federal judges have generally made and relied upon factual determinations about the nature of the offense and the offender — and it is impossible to imagine how federal judges could reasonably carry out their sentencing responsibilities without making such factual determinations.
Under the mandatory Federal Sentencing Guidelines regime, these factual determinations were relatively formal and precise. (For example, a trial judge under that regime might have found based on a post-trial proceeding that a drug offense involved six kilograms of cocaine or that the loss caused by a mail fraud offense was $2.5 million.) By contrast, under the pre-Sentencing Reform Act federal system, the factual determinations were often relatively informal and imprecise. (A trial judge might have concluded from the presentence report that an offense involved “a large quantity of drugs” or that a mail fraud scheme caused “a great loss.”) Under both systems, however, the judges made factual determinations about the nature of the offense and the offender and determined the sentence accordingly. And as the Courts of Appeals have unanimously concluded, the post-Booker federal sentencing regime also permits trial judges to make such factual findings and to rely on those *302 findings in selecting the sentences that are appropriate in particular cases.[4]
Under the post-jBooker system, if a defendant believes that his or her sentence was based on an erroneous factual determination, it seems clear that the defendant may challenge that finding on appeal. As noted, the post-Booker system permits a defendant to obtain appellate review of the reasonableness of a sentence, and a sentence that the sentencing court justifies solely on the basis of an erroneous finding of fact can hardly be regarded as reasonable. Thus, under the post-Booker system, there will be cases — and, in all likelihood, a good many cases — in which the question whether a defendant will be required to serve a greater or lesser sentence depends on whether a court of appeals sustains a finding of fact made by the sentencing judge.
A simple example illustrates this point. Suppose that a defendant is found guilty of 10 counts of mail fraud in that the defendant made 10 mailings in furtherance of a scheme to defraud. See 18 U. S. C. § 1341 (2000 ed., Supp. IV). Under the mail fraud statute, the district court would have discretion to sentence the defendant to any sentence ranging from probation up to 200 years of imprisonment (20 years on each count). Suppose that the sentencing judge imposes the maximum sentence allowed by statute — 200 years of imprisonment — without identifying a single fact about the offense *303 or the offender as a justification for this lengthy sentence. Surely that would be an unreasonable sentence that could not be sustained on appeal.
Suppose, alternatively, that the sentencing court finds that the mail fraud scheme caused a loss of $1 million and that the victims were elderly people of limited means, and suppose that the court, based on these findings, imposes a sentence of 10 years of imprisonment. If the defendant challenges the sentence on appeal on the ground that these findings are erroneous, the question whether the defendant will be required to serve 10 years or some lesser sentence may well depend on the validity of the district court’s findings of fact.
Booker, then, approved a sentencing system that (1) requires a sentencing judge to “consult” and “take into account” legislatively defined sentencing factors and guidelines; (2) subjects a sentencing judge’s exercise of sentencing discretion to appellate review for “reasonableness”; and (3) requires sentencing judges to make factual findings in order to support the exercise of this discretion.
II
The California sentencing law that the Court strikes down today is not meaningfully different from the federal scheme upheld in Booker.
As an initial matter, the California law gives a judge at least as much sentencing discretion as does the post-Booker federal scheme. California’s system of sentencing triads and separate “enhancements”[5] was enacted to achieve sentences “in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion.” Cal. Penal Code Ann. § 1170(a)(1) (West Supp. 2006). This “specified discretion” is quite *304 broad. Under the statute, a sentencing court “shall order imposition of the middle term” of the base-term triad, “unless there are circumstances in aggravation or mitigation of the crime.” § 1170(b). While the court may not rely on any fact that is an essential element of the crime or of a proven enhancement, the “sentencing judge retains considerable discretion to identify aggravating factors.” People v. Black, 35 Cal. 4th 1238, 1247, 113 P. 3d 534, 538 (2005).
In exercising its sentencing discretion, a California court can look to any of the 16 specific aggravating circumstances, see Cal. Rule of Court 4.421 (Criminal Cases) (West 2006), or 15 specific mitigating circumstances, see Rule 4.423, itemized in the California Rules of Court. A California trial court can also consider the “[gjeneral objectives of sentencing,” including protecting society, punishing the defendant, encouraging the defendant to lead a law-abiding life and deterring the defendant from committing future offenses, deterring others from criminal conduct by demonstrating its consequences, preventing the defendant from committing new crimes by means of incarceration, securing restitution for crime victims, and achieving uniformity in sentencing.[6] Rule 4.410(a). And if a California trial court finds that its sentencing authority is unduly restricted by these factors, which the California Supreme Court has recognized “are largely the articulation of considerations sentencing judges have always used in making these decisions,” People v. Hernandez, 46 Cal. 3d 194, 205, 757 P. 2d 1013, 1019 (1988), overruled on other grounds, People v. King, 5 Cal. 4th 59, 78, n. 5, 851 P. 2d 27, 39, n. 5 (1993), a California sentencing judge is also authorized to consider any “additional criteria reasonably related to the decision being made,” Rule *305 4.408(a); see also Black, supra, at 1256, 113 P. 3d, at 544 (“The Legislature did not identify all of the particular facts that could justify the upper term”).[7]
In short, under California law, the “‘circumstances’ the sentencing judge may look to in aggravation or in mitigation of the crime include . . . ‘practically everything which has a legitimate bearing’ on the matter in issue.” People v. Guevara, 88 Cal. App. 3d 86, 93, 151 Cal. Rptr. 511, 516 (1979); see also Rule 4.410(b) (“The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case”). Indeed, as one California court has explained, sentencing discretion may even be guided by a “judge’s subjective determination of . . . the appropriate aggregate sentence” based on his “experiences with prior cases and the record in the defendant’s ease.” People v. Stevens, 205 Cal. App. 3d 1452, 1457, 253 Cal. Rptr. 173, 177 (1988). “A judge’s subjective belief regarding the length of the sentence to be imposed is not improper as long as it is channeled by the guided *306 discretion outlined in the myriad of statutory sentencing criteria.” Ibid.
The California scheme — like the federal “advisory Guidelines” — does require that this discretion be exercised reasonably. Indeed, the California Supreme Court, authoritatively construing the California statute,[8] has explained that § 1170(b)'s “requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be reasonable.” Black, 35 Cal. 4th, at 1255,113 P. 3d, at 544 (emphasis in original); see also id., at 1257-1258, 113 P. 3d, at 545 (“The jury’s verdict of guilty on an offense authorizes the judge to sentence a defendant to any of the three terms specified by statute as the potential punishments for that offense, as long as the judge exercises his or her discretion in a reasonable' manner that is consistent with the requirements and guidelines contained in statutes and court rules”). Even when a court imposes the “presumptive” middle term, its decision is reviewable for abuse of discretion— that is, its decision to sentence at the “standard” term must be reasonable. See People v. Cattaneo, 217 Cal. App. 3d 1577, 1587-1588, 266 Cal. Rptr. 710, 716 (1990).
Moreover, the California system, like the post-Booker federal regime, recognizes that a sentencing judge must have the ability to look at all the relevant facts — even those outside the trial record and jury verdict — in exercising his or *307 her discretion. “The judicial factfinding that occurs during that selection process is the same type of judicial factfinding that traditionally has been a part of the sentencing process.” Black, supra, at 1258,113 P. 3d, at 545.
III
Despite these similarities between the California system and the “advisory Guidelines” scheme approved in Booker, the Court nevertheless holds that the California regime runs afoul of the Sixth Amendment. The Court reasons as follows: (1) California requires that some aggravating fact, apart from the elements of the offense found by the jury, must support an upper term sentence; (2) Blakely defined the “statutory maximum” to be “the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant,” 542 U. S., at 303 (emphasis in original); and therefore (3) the California regime violates “Apprendi’s bright-line rule,” id., at 308, that “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,” Apprendi, 530 U. S., at 490.
This argument is flawed. For one thing, it is not at all clear that a California court must find some case-specific, adjudicative “fact” (as opposed to identifying a relevant policy consideration) before imposing an upper term sentence. What a California sentencing court must find is a “circumstanc[e] in aggravation,” Cal. Penal Code Ann. § 1170(b) (emphasis added), which, California’s Court Rules make clear, can include any “criteria reasonably related to the decision being made,” Rule 4.408(a).
California courts are thus empowered to take into account the full panoply of factual and policy considerations that have traditionally been considered by judges operating under fully discretionary sentencing regimes — the constitutionality of which the Court has repeatedly reaffirmed. California law *308 explicitly authorizes a sentencing court to take into account, for example, broad sentencing objectives like punishment, deterrence, restitution, and uniformity, see Rule 4.410, and even a judge’s “subjective belief” as to the appropriateness of the sentence, see Stevens, 205 Cal. App. 3d, at 1457, 253 Cal. Rptr., at 177, as long as the final result is reasonable.[9] Policy considerations like these have always been outside the province of the jury and do not implicate the Sixth Amendment concerns expressed in Apprendi.
In short, the requirement that a California court find some “circumstanc[e] in aggravation” before imposing an upper term sentence is not the same as a requirement that it find an aggravating fact. And if a California sentencing court need not find a fact beyond those “reflected in the jury verdict or admitted by the defendant,” Blakely, supra, at 303 (emphasis deleted), then Apprendi’s “bright-line rule” plainly does not apply.[10]
*309 But even if the California law did require that a sentencing court find some aggravating “fact” before imposing an upper term sentence, that would not make this case constitutionally distinguishable from Booker. As previously explained, the “advisory Guidelines,” bounded by reasonableness review, effectively (albeit less explicitly) impose the same requirement on federal judges. Booker’s reasonableness review necessarily supposes that some sentences will be unreasonable in the absence of additional facts justifying them. (Recall the prior hypothetical ease in which it was posited that the district court imposed a sentence of 200 years of imprisonment for mail fraud without citing a single aggravating fact about the offense or the offender.) Thus, although the post-Booker Guidelines are labeled “advisory,” reasonableness review imposes a very real constraint on a judge’s ability to sentence across the full statutory range without finding some aggravating fact.[11]
*310 The Court downplays the significance of Booker reasonableness review on the . ground that Booker-style “reasonableness . . . operates within the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints.” Ante, at 292-293 (emphasis in original). But this begs the question, which concerns the scope of those “Sixth Amendment constraints.” That question is answered by the Court’s remedial holding in Booker, which necessarily stands for the proposition that it is consistent with the Sixth Amendment for the imposition of an enhanced sentence to be conditioned on a factual finding made by a sentencing judge and not by a jury.
The Court relies heavily on Blakely’s admonition that “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” 542 U. S., at 303 (emphasis in original). But the Court fails to recognize how this statement must be understood in the wake of Booker.
For each statutory offense, there must be a sentence that represents the least onerous sentence that can be regarded as reasonable in light of the bare statutory elements found by the jury. To return to our prior example of a mail fraud offense, there must be some sentence that represents the least onerous sentence that would be appropriate in a case in which the statutory elements of mail fraud are satisfied but in which the offense and the offender are as little deserving of punishment as can be imagined. (Whether this sentence is the statutory minimum (probation, see 18 U. S. C. § 1341 (2000 ed., Supp. IV)) or the minimum under the advisory Guidelines (also probation, see United States Sentencing Commission, Guidelines Manual §2B1.1 and Sentencing Table (Nov. 2006)) is irrelevant for present purposes; what is relevant is that there must be some minimum reasonable sentence.) This sentence is “the maximum sentence” that could reasonably be imposed “solely on the basis of the facts *311 reflected in the jury verdict or admitted by the defendant.” Blakely, swpra, at 303 (emphasis deleted).
Booker’s reasonableness review necessarily anticipates that the imposition of sentences above this level may be conditioned upon findings of fact made by a judge and not by the jury. Booker held that a system of “advisory Guidelines” with reasonableness review is consistent with the Sixth Amendment, and the same analysis should govern California’s “requirement that the decision to impose the upper term be reasonable.” Black, 35 Cal. 4th, at 1255,113 P. 3d, at 544 (emphasis in original). That the California requirement is explicit, while the federal aggravating factor requirement is (at least for now) implicit, should not be constitutionally dispositive.
Unless the Court is prepared to overrule the remedial decision in Booker, the California sentencing scheme at issue in this case should be held to be consistent with the Sixth Amendment. I would therefore affirm the decision of the California Court of Appeal.

 The Court’s recognition of this is hardly surprising since, as Judge McConnell has pointed out, “fully discretionary sentencing . . . was the system [that was] in place when the Sixth Amendment was adopted” and that “prevailed in the federal courts from the Founding until enactment of the Sentencing Reform Act of 1984 ... without anyone ever suggesting a conflict with the Sixth Amendment.” The Booker Mess, 83 Denver U. L. Rev. 665, 679 (2006). Indeed, the original federal criminal statute enacted by the First Congress set forth indeterminate sentencing ranges for a variety of offenses, leaving the determination of the precise sentence to the judge’s discretion. See, e. g., Act of Apr. 30,1790, ch. 9, §2,1 Stat. *299 112 (crime of misprision of treason punishable by imprisonment not exceeding seven years and fine not exceeding $1,000); §6, id., at 113 (crime of misprision of a felony punishable by imprisonment not exceeding three years and fine not exceeding $500); § 15, id., at 115-116 (crime of falsifying federal records punishable by imprisonment not exceeding seven years, fine not exceeding $5,000, and whipping not exceeding 39 stripes); see generally Little & Chen, The Lost History of Apprendi and the Blakely Petition for Rehearing, 17 Fed. Sentencing Rptr. 69 (2004).

 The four Justices who would have upheld the constitutionality of the mandatory Federal Sentencing Guidelines system did not, of course, disagree with this basic point. Indeed, they were of the view that “[h]istory does not support a ‘right to jury trial’ in respect to sentencing facts.” Booker, 543 U. S., at 328 (Breyer, J., dissenting in part).

 While the dissenters from the remedial portion of the Court’s opinion disagreed with Justice Breyer’s severability analysis, they did not sug *300 gest that the resulting “advisory Guidelines” structure was unconstitutional. Rather, they recognized — as Justice Stevens explained in his portion of the Court’s opinion — that “[i]f the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.” Id., at 233.

 Every Court of Appeals to address the issue has held that a district court sentencing post-Booker may rely on facts found by the judge by a preponderance of the evidence. See United States v. Kilby, 443 F. 3d 1135, 1141 (CA9 2006); United States v. Cooper, 437 F. 3d 324, 330 (CA3 2006); United States v. Vaughn, 430 F. 3d 518, 525-526 (CA2 2005); United States v. Morris, 429 F. 3d 65, 72 (CA4 2005); United States v. Price, 418 F. 3d 771, 788 (CA7 2005); United States v. Magallanez, 408 F. 3d 672, 684-685 (CA10 2005); United States v. Pirani, 406 F. 3d 543, 551, n. 4 (CA8 2005) (en banc); United States v. Yogar, 404 F. 3d 967, 972 (CA6 2005); United States v. Mares, 402 F. 3d 511, 519, and n. 6 (CA5 2005); United States v. Duncan, 400 F 3d 1297, 1304-1305 (CA11 2005); United States v. Antonakopoulos, 399 F. 3d 68, 74 (CA1 2005).

 These enhancements, which add additional years onto the base-term triad selected by the court, see ante, at 280, must be pleaded and proved to a jury beyond a reasonable doubt. They are not at issue in this case.

 These factors are similar to the federal sentencing policies set forth in 18 U. S. C. § 3553(a) (2000 ed. and Supp. IV), which directs a court to consider, among other things, the need to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public.

 As the California Supreme Court explained in Black:
“In adopting the sentencing rules, the Judicial Council considered and rejected proposals that the rules provide an exclusive list of sentencing criteria and that the criteria be assigned specific weights, on the ground that the Legislature intended to give the sentencing judge discretion in selecting among the lower, middle, and upper terms. The report on which the Judicial Council acted in adopting the rules explains that ‘an exclusive listing would be inconsistent with the statutory mandate to adopt “rules providing criteria for the consideration of the trial judge” [§ 1170.3] since this language does not purport to limit the discretion afforded the court in each of the five enumerated sentencing decisions, but calls for criteria which will assist the courts in the exercise of that discretion.’ (Judicial Council of Cal., Advisory Com. Rep., Sentencing Rules and Sentencing Reporting System (1977) p. 6.) ‘Any attempt to impose a weighting system on trial courts ... would be an infringement on the sentencing power of the court.’ (Id., p. 8.) ‘The substantive law, and section 1170(a)(1), give discretion to the trial court; the rules can guide, but cannot compel, the exercise of that discretion.’ (Id., p. 11.)” 35 Cal. 4th, at 1256, n. 11, 113 P. 3d, at 544, n. 11.

 The Court correctly notes that we need not defer to the California Supreme Court’s construction of federal law, including its judgment as to whether California law is consistent with our Sixth Amendment jurisprudence. See ante, at 293, n. 16. But the California Supreme Court’s exposition of California law is authoritative and binding on this Court. See, e. g., Mullaney v. Wilbur, 421 U. S. 684, 691 (1975) (“[Sjtate courts are the ultimate expositors of state law [and] we are bound by their constructions except in extreme circumstances”); Wainwright v. Goode, 464 U. S. 78, 84 (1983) (per curiam) (“[T]he views of the State’s highest court with respect to state law are binding on the federal courts”); Ring v. Arizona, 536 U. S. 584, 603 (2002) (recognizing the Arizona Supreme Court’s construction of Arizona sentencing law as authoritative).

 The State of California acknowledged in its brief that “[tjhe court can rely on essentially any reason placing the defendant’s particular offense outside the mean when selecting” which term of the triad to impose. Brief for Respondent 32. As California’s counsel acknowledged at oral argument, a concern for deterrence in light of an uptick in crime in a particular community, for example, could be a “circumstanc[e] in aggravation” supporting imposition of an upper term sentence under California law, even though that concern is not based on judge-found, case-specific facts. See Tr. of Oral Arg. 32-40.

 It is true that California’s Court Rules also itemize more concrete aggravating circumstances that they label “[fjacts relating to the crime” and “[fjacts relating to the defendant.” See Cal. Rules of Court 4.421 and 4.423 (Criminal Cases) (West 2006). But these lists are not exhaustive, and they do not impair a court’s ability to take into account more general sentencing objectives in deciding whether to sentence a defendant to the upper term. The Rules’ provision that “[cjircumstances in aggravation and mitigation shall be established by a preponderance of the evidence,” Rule 4.420(b), is clearly meant to cover the types of crime- and defendant-specific adjudicative facts set forth in the Rules immediately following; there is nothing to suggest that this provision excludes consideration of more general sentencing objectives that are not conducive to such trial-type proof. As the Rules explicitly recognize, these different categories *309 of sentencing considerations are not mutually exclusive. See Rule 4.410(b) (“The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case”).

 The Court believes that in order to reach this conclusion, I must “previe[w]... how ‘reasonableness review,’ post-Booker, works,” ante, at 287-288, n. 13, and perhaps even prejudge this Court’s forthcoming decisions in Rita v. United States and Claiborne v. United States, ante, at 293, n. 15. But my point is much more modest. We need not map all the murky contours of the post-Booker landscape in order to conclude that reasonableness review must mean something. If reasonableness review is more than just an empty exercise, there inevitably will be some sentences that, absent any judge-found aggravating fact, will be unreasonable. One need not embrace any presumption of reasonableness or unreasonableness to accept this simple point. If this is the case — and I cannot see how it is not, given the Court’s endorsement of reasonableness review in Booker— then there is no meaningful Sixth Amendment difference between California’s sentencing system and the post -Booker “advisory Guidelines.” Under both, a sentencing judge operating under a reasonableness constraint must find facts beyond the jury’s verdict in order to justify the imposition of at least some sentences at the high end of the statutory range.