NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 9 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10380 |
| Plaintiff-Appellee, | D.C. No. 2:11-cr-00261-GEB-1 |
| v. | |
| JAYMAR DWAUNE JAMERSON, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted December 16, 2016
San Francisco, California

Before: HAWKINS, BERZON, and MURGUIA, Circuit Judges.

Jaymar Dwaune Jamerson ("Jamerson") appeals from the district court's

judgment and challenges the 235-month sentence imposed following his conviction

for possession with intent to distribute cocaine base in violation of 21 U.S.C. §

841(a)(1) ("Count One"), possession with intent to distribute cocaine in violation

of 21 U.S.C. § 841(a)(1) ("Count Two"), and felon in possession of a firearm in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

violation of 18 U.S.C. § 922(g)(1) ("Count Three"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand for resentencing.

1. Jamerson argues that the district court incorrectly concluded that the substance he possessed with respect to Count One was all cocaine base instead of a mixture of cocaine base and cocaine powder. We disagree. The district court's determination at sentencing that Jamerson disposed of only cocaine base, which has a lumpy rocklike form, is a factual finding that is reviewed for clear error and must be supported by a preponderance of the evidence. *United States v. Scheele*, 231 F.3d 492, 497 (9th Cir. 2000).

Fairfield Police Officer Adam Brunie testified that he "observed the substance ricocheting off the ground. It was bouncing like a rock would. Parts of it were breaking off. Parts of it were hitting my car. You could hear it pinging against my hood, my bumper." Fairfield Police Officer Gene Carter testified that the material was chunky, rock-like, and was bouncing off of his windshield. And all of the recovered drugs were cocaine base. The evidence therefore supports the district court's finding that Jamerson possessed only cocaine base with respect to Count One.

2. Jamerson argues that the district court incorrectly approximated the amount of cocaine base that he possessed with respect to Count One. We agree. "[I]n calculating the amount of drugs involved in a particular operation, a degree of

2

estimation is often necessary." *Id.* at 498; *see also* U.S. Sentencing Guidelines Manual § 2D1.1, cmt. n.12 (U.S. Sentencing Comm'n 2011) ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). "Whether the method adopted by the district court to approximate the relevant quantity of drugs is proper under the guidelines is [] reviewed de novo." *Scheele*, 231 F.3d at 497 (citation omitted). In approximating drug quantity, courts are required to "err on the side of caution." *United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006) (citation omitted). "[W]hen there are two 'equally good measures' for making a calculation under the Guidelines, a court must select the one 'bringing the less punishment.'" *United States v. Forrester*, 616 F.3d 929, 949 (9th Cir. 2010) (quoting *United States v. Hardy*, 289 F.3d 608, 614 (9th Cir. 2002)).

At sentencing, the district court was required to approximate the total drug quantity for Count One because police recovered only a portion of the amount of cocaine base that Jamerson possessed. During Jamerson's trial, Officer Brunie testified that he saw Jamerson hold and dump four baseball-sized baggies during the vehicle pursuit. The government's expert on cocaine base, U.S. Drug Enforcement Administration Special Agent Brian Nehring, testified that a baseball-sized volume of cocaine base contains approximately 100 to 112 grams of cocaine base. The district court adopted a drug approximation method based on Officer

3

Brunie's and Agent Nehring's testimony that resulted in Jamerson's possession of 448 grams of cocaine base.

Though the district court's drug approximation method is arguably reliable, there existed an equally or more reliable drug approximation method that would have resulted in less punishment. After the vehicle pursuit was terminated, officers recovered several pieces of cocaine base. The largest piece of recovered cocaine base was marked as Exhibit 101-A and weighed 8.07 grams at trial. Several smaller pieces of cocaine base, collectively marked as Exhibit 200, weighed 2.14 grams at trial. At trial, Officer Brunie testified that the objects Jamerson discarded during the pursuit were "probably five, six times larger" than Exhibit 101-A, and "Exhibit 200, maybe double that from 101-A just because it is so much smaller." Since the district court credited Officer Brunie's trial testimony, the court could have also approximated the quantity of drugs by multiplying the weight of Exhibit 101-A by five or six or the weight of Exhibit 200 by ten or twelve to arrive at an approximate but lesser weight of each of the four objects discarded by Jamerson. If each of the four discarded pieces of cocaine base were ten times larger than Exhibit 200, which weighed 2.14 grams at trial, then each of the four objects would weigh 21.4 grams and Jamerson would have possessed a total amount of cocaine

4

base that would have resulted in significantly less punishment.[1]  This method is equally or more reliable than the method employed by the district court because it incorporates the weight of the actual cocaine base recovered.  *See Kilby*, 443 F.3d at 1141 ("We have approved several different methods for making drug quantity approximations, but in these methods, the variables involved were all based on facts *specific to the defendant's case*." (emphasis added)).

The district court therefore erred in its selection of a drug approximation method.  *Forrester*, 616 F.3d at 949.  On remand, the district court should employ the drug approximation method resulting in less punishment, which in this case combines the actual weights of the recovered drugs with Officer Brunie's testimony comparing the sizes of Exhibits 101-A and 200 to the size of the drugs in Jamerson's hand.

3.  Jamerson argues that the district court erred by applying a two-level sentencing enhancement under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) for possession of a dangerous weapon because the government did not prove a connection between the offense and the weapon and because Jamerson was acquitted of the fourth charge for possession of a firearm in furtherance of drug

---

[1] Due to water loss, Exhibits 101-A and 200 lost weight between the time the pieces of cocaine base were recovered and the time the Exhibits were introduced at trial.  We do not determine which weight—the recovery weight or the trial weight—the district court should use at resentencing.

5

trafficking crimes.  But a court may apply the enhancement under U.S.S.G. §

2D1.1(b)(1) without the government proving a connection between the offense and

the weapon.  *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989)

("[T]he language of the Guidelines does *not* require that a *connection* be shown.

Rather, it requires only that the weapon be *possessed* during commission of the

offense.").  And a sentencing court does not violate a defendant's constitutional

due process rights by enhancing a sentence in accordance with the Guidelines for

conduct for which the defendant has been acquitted at trial.  *United States v.

Mercado*, 474 F.3d 654, 657–58 (9th Cir. 2007).  The district court therefore did

not err by applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(1).

**AFFIRMED in part; VACATED in part; and REMANDED for

resentencing**.